(C. D. 1626)

HARRY W. FRIEDLAND *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided June 23, 1954)

*Barnes, Richardson & Colburn (James F. Donnelly, Harry LeBien,* and *E. Thomas Honey* of counsel) for the plaintiff.
*Warren B. Burger,* Assistant Attorney General (*William J. Vitale* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

### Before EKWALL and JOHNSON, Judges

JOHNSON, Judge:   This controversy involves the classification of certain synthetic rough rubies, described on the invoice as "rubis rosé foncé" and "rubis grenat."   The collector classified the merchandise under the provisions of paragraph 214 of the Tariff Act of 1930 as "Earthy or mineral substances wholly or partly manufactured * * * not specially provided for * * * 30 per centum ad valorem * * *."   The plaintiff relies chiefly upon the claim that the merchandise is free of duty under the provisions of paragraph 1668 as "precious stones, rough or uncut, * * * whether in their natural form or broken * * *."

The provisions of the Tariff Act of 1930 in question are as follows:

PAR. 214.   Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem * * *.

PAR. 1668.   Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving splitting, cutting, or other process, whether in their natural form or broken, glaziers' and engravers' diamonds, any of the foregoing not set, miners' diamonds, and diamond dust.

At the trial, several samples of synthetic rough ruby boules were admitted in evidence.   Exhibit 1 is about 1¾ inches long and three-fourths of an inch wide at the widest part, coming to a rounded point at the other end.   The color of the exhibit 1 is ruby red, although it is not polished, and it has been split so that the exhibit is only one portion of the entire article.   Exhibit 2 is practically the same dimensions, a trifle more narrow, but also is split, and of a much darker red color.   Illustrative exhibits C, D, and 3 consist of ruby boules, all split, varying slightly in color, and practically the same size.   Illustrative exhibit A is an illustration of the apparatus used in forming the synthetic rubies, and illustrative exhibit B presents pictures of (1) a perfect boule of ruby as manufactured and (2) a split boule showing a typical fractured surface.

Harry W. Friedland, a dealer in semiprecious stones and cultured pearls and dealing with synthetic stones since 1908, testified for the

plaintiff as to his manufacturing experience in France and his familiarity with the production of such stones in factories all over Europe.

The witness had used synthetic stones for jewelry purposes and had supervised cutting factories in Geneva, Switzerland, and in Germany. He testified that the imported boules are, in fact, corundum, but when converted into a finished product they are invoiced and sold under the name of "ruby." Testifying as an expert, the witness stated that synthetic and natural rubies are of the same hardness, the same in appearance, have the same brilliance, and possess the same cutting properties. The witness had imported both the whole boules and the half boules. He stated that the boule is the only way in which synthetic rubies come into existence and, in such state, constitute the roughest and crudest form of synthetic rubies within his experience.

Plaintiff's second witness was Leon Merker, a research chemist in the employ of the National Lead Co. The witness had specialized in synthesizing stones and had served with the United States Department of Commerce as a Military Government officer, investigating the German synthetic stone industry. From such investigation, he had compiled a report published by the Department of Commerce. During 1941 through 1945, he had been employed by the plaintiff in charge of research and development. A brief summary of the manufacturing process employed by him in the United States to produce synthetic rubies follows:

Aluminum ammonium sulphate in the purest form obtainable is processed with chromic acid, or ammonium dichromate, or chromium oxide. This mixture is calcined in a furnace, the temperature of which is 1,200 to 1,300 degrees centigrade. As a result, the material is transformed into alpha alumina, commonly called corundum. The material is then loaded into a hopper of a burner, to which is attached an inverted oxyhydrogen torch. Small amounts of the alumina are released into the flame of this torch and thereby melted. The flame is kept at a temperature of approximately 2,550 degrees centigrade. The fused alumina powder is allowed to crystallize and, depending upon the judgment of the operator, the crystal grows and thereafter is allowed to cool. This fused product is the complete boule.

The witness was of the opinion that the processes used in Europe and the United States were substantially similar and standard throughout the world. The process described by the witness consists essentially of cementing small crystals of corundum and transforming them into one large crystal form. During the process of manufacturing synthetic rubies, according to the witness, no vanadium, tungsten, molybdenum, boron, tantalum, columbium, niobium, uranium, or elementary chromium was added. Illustrative exhibit 3 represents a sample of a boule made by the witness. The witness characterized exhibits 1 and

2 and illustrative exhibit 3 as corundum, and stated that it would also be correct to chemically designate them as aluminum oxide; that alpha alumina is an aluminum oxide in a certain crystalline form. The witness also referred to the exhibits as crystals of alpha corundum, containing chromium ions in solid solution. The witness stated that the sketch marked in evidence as illustrative exhibit A was a good picture of a Verneuill high-temperature furnace used in producing synthetic rubies.

The witness also testified that natural corundum contains chromium oxide if it has a red color. In other words, if a natural corundum contains chromium ions and exhibits the color of exhibits 1 and 2 or illustrative exhibit 3, it is a ruby and, without the chromium, the stones would be colorless. Speaking of the chromium, the witness stated that the chromium ion is a positively charged chromium atom and, as such, it is distinguished from a chromium atom which is electrically neutral. Therefore, it would not be possible to have corundum crystals contain 2 to 7 per centum chromium atoms without the crystal breaking. As to the chromium ion, it is not possible for it to exist except in compounds, as it has an unstable structure.

Arthur K. Seemann, manager of the synthetic crystal department of the Linde Air Products Co., testified for the Government that he is a mining engineer and familiar with crystals such as exhibits 1 and 2. The description of the witness of the manner in which synthetic rubies were manufactured is practically the same as plaintiff's witnesses. According to the witness, synthetic rubies are colored by adding a chromium compound in varying degrees for the shades of ruby desired. The witness stated that various articles are manufactured from crystals such as here in question, including gem stones, phonograph needles, thread guides, jewel bearings, and precision balls. He further testified that pure corundum crystals are transparent and are called white sapphires, and a small percentage of chromic oxide as an impurity in the corundum crystal produces what is commonly known as a ruby. In other words, a ruby is a form of corundum with the addition of small parts of chromic oxide to give it color.

Counsel for the plaintiff contends that synthetic rubies are in every respect identical to the natural, uncut ruby, being of the same hardness and appearance and having the same cutting properties, and, when cut, have the same brilliance as natural cut rubies; that the only way synthetic rubies come into existence is in the rough boule form and, therefore, the boule is the roughest or crudest form of synthetic ruby. Consequently, rough or uncut synthetic rubies are classifiable as natural rough or uncut rubies.

Counsel for the plaintiff argues that the term "precious stone" includes the ruby, citing *Hahn* v. *United States*, T. D. 19449; that if synthetic rubies in the rough state are dutiable at 30 per centum ad

valorem under paragraph 214, as earthy or mineral substances, an anomalous situation is created, inasmuch as the Court of Customs and Patent Appeals held in *S. Nathan & Co., Inc.* v. *United States*, 37 C. C. P. A. (Customs) 99, C. A. D. 426, that synthetic rubies, cut but not set, were dutiable under the *eo nomine* provision for rubies, cut but not set, at 10 per centum ad valorem under paragraph 1528, rather than as imitation precious stones at 20 per centum ad valorem under the same paragraph. Although the rubies there had been first formed in the same manner as the rubies here in question prior to cutting, when cut, they are dutiable at a lower rate than the rubies in question, unless same are admitted free of duty as natural stones.

Counsel also cites *Larzelere & Co.* v. *United States*, 8 Ct. Cust. Appls. 64, T. D. 37198, where artificial corundum was held to be free of duty as corundum; *Roessler & Hasslacher Chemical Co.* v. *United States*, 30 Treas. Dec. 61, T. D. 36077, where synthetic cryolite was held free as cryolite, the court there pointing out that an article, artificially produced, when it is the same substance and composition as the natural article, is entitled to the same classification as the natural product; *Fritzsche Brothers* v. *United States*, 7 Treas. Dec. 49, T. D. 24905, where synthetic oil of cassia was held entitled to the same classification as the tariff provision for oil of cassia; and other cases holding to the same effect. Plaintiff's counsel contends further that a parallel issue arose in the case of *Leo Meyerowitz* v. *United States*, 50 Treas. Dec. 421, T. D. 41859, where the collector classified corundum, consisting of brownish-black stones, apparently in their natural state, as diamonds and other precious stones. The merchandise was held dutiable as corundum when it was established that it was not suitable for gem purposes. The analogy stressed is that in the present case the stones are suitable for gem purposes. However, it is noted that the court stated in that case—

While corundum ore is a precious stone, it is not mentioned eo nomine in paragraph 1429 as it is in paragraph 1570. Being eo nomine mentioned in paragraph 1570 it is not dutiable under paragraph 1429.

The trouble with the contention of counsel for the plaintiff is that the term "rubies" is not mentioned in paragraph 1668. In every one of the cases cited above, the synthetic article was held dutiable under the *eo nomine* provision for the natural article. Unfortunately for plaintiff's position here, we do not have that state of facts.

Counsel for the Government contends that paragraph 1668 provides for precious stones in a rough or uncut condition, not advanced in value from their natural state, and, therefore, contemplates only the natural precious stones and not synthetic precious stones. It is argued that a precious stone cannot be both synthetic and natural and, since the similitude clause has no application, inasmuch as the merchandise is a mineral substance and so provided for under paragraph 214,

cases involving *eo nomine* designations, cited by the plaintiff, are inapplicable.

We are of the opinion that inasmuch as paragraph 1668 fails to provide *eo nomine* for rubies, without regard to their condition, but rather provides for precious stones in a natural state, the synthetic rubies in question are more specifically provided for as articles, wares, and materials, composed wholly or in chief value of mineral substances, under paragraph 214, as assessed by the collector.

Judgment will, therefore, be entered in favor of the Government.